DECISION
{¶ 1} Relator, Viola M. Kinzer, has filed this original action in mandamus requesting this court to issue a writ of mandamus that orders respondent Industrial Commission of Ohio ("commission") to vacate its order denying permanent total disability ("PTD") compensation, and to issue an order awarding compensation under State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. Relator also requested a writ of mandamus requesting this court to order the commission to vacate its order denying relator's request to take the deposition of Dr. Hanington and to issue an order granting that request.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission did not abuse its discretion in denying relator compensation based on relator's ability to return to her previous work and/or the ability to gain unskilled entry-level employment in another field. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision, essentially rearguing issues already adequately addressed in that decision. For the reasons stated in the decision of the magistrate, the objections are overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, we deny the requested writ.
Objections overruled; writ denied.
BOWMAN and KLATT, JJ., concur.
 APPENDIX A IN MANDAMUS {¶ 5} In this original action in mandamus, relator, Viola M. Kinzer, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission"), to vacate its denial of compensation for permanent total disability ("PTD") and to issue an order awarding compensation under State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315.
 Findings of Fact: {¶ 6} 1. In 1976, Viola M. Kinzer ("claimant") sustained an injury at work, and her workers' compensation claim was allowed for lumbar strain and aggravation of pre-existing arthritis. Claimant had no compensable lost time from work.
 {¶ 7} 2. In 1986, claimant was injured in an automobile accident, resulting in compression fracture of the spine. In June 1990, she underwent an anterior spinal fusion from T11 to L3. In July 1990, she underwent a posterial spinal fusion from T8 to L3 with implantation of hardware, as well as a vertebral corpectomy and rib strut graft. These surgeries were not part of the workers' compensation claim.
 {¶ 8} 3. Claimant ceased working in 1990.
 {¶ 9} 4. In April 1998, claimant filed a PTD application. She completed a vocational questionnaire stating that her basic job duties were "cleaning and stocking restrooms." She listed her "exact operations" as follows: "Cleaned break room, dusted, swept, mopped, cleaned restrooms, stocked paper supplies in restrooms and soaps."
 {¶ 10} 5. The PTD application was supported by a March 6, 1998 opinion from Edward M. Slowik, D.O., whose report stated, in its entirety:
 {¶ 11} "I have reviewed Mrs. Kinzer's medical records.
 {¶ 12} "It is my opinion that she is totally and permanently disabled from any gainful occupation or activities."
 {¶ 13} 6. In August 1998, claimant was examined on behalf of the commission by Kenneth R. Hanington, M.D., who reviewed the medical history relating to the industrial injury as well as the history relating to the automobile accident. Claimant reported that, currently, she had "no problems with her back" but was experiencing swelling in her hips and legs, and had difficulty walking due to knee arthritis. Dr. Hanington described his examination:
 {¶ 14} "* * * She is able to heel/toe rise without difficulty. She can attain a single leg stance without difficulty. She cannot attain a full squat because of her knee complaints. Her spine is straight and her pelvis is level. Sciatic notch compression is negative bilaterally. She has a well-healed midline scar, 12 inches in length, in the thoracolumbar area. She has an anterior iliac incision, also 12 inches in length, on the left side. There is no evidence of neuroma formation in either scar. The claimant's lumbar range of motion is restricted, with 30 degrees of forward flexion, 0 degrees of extension, lateral rotation of 10 degrees bilaterally, and lateral bending of 10 degrees bilaterally. Her motor strength is 5/5 in all major groups of the lower extremities. There is no evidence of atrophy. Her calf circumference, 5 inches below the medial joint line, is 15½ inches bilaterally. Her thigh circumference, 5 inches above the medial joint line, is 17½ inches bilaterally. Sensation is intact to light touch throughout the lower extremities. DTR's are absent at the knees and ankles. Straight leg raising in the seated and recumbent positions is negative.
 {¶ 15} "Discussion: The claimant had a work-related injury in 1976 for which she was allowed for a lumber strain and aggravation of pre-existing arthritis. She was subsequently involved in a motor vehicle accident and sustained a lumber fracture. She developed significant problems in the thoracolumbar spine and required an anterior/posterior fusion. This was unrelated to her Worker's Compensation injury. She has done very well following this surgery, with her main complaints, at this point, being related to arthritis in her hips and knees."
 {¶ 16} Dr. Hanington estimated that the 1976 lumbar strain caused no residual impairment but that the aggravation of pre-existing arthritis resulted in a 5% permanent impairment to the body as a whole. Dr. Hanington concluded that, considering only the allowed conditions, claimant "should be able to work in a light duty capacity." He further opined that, if claimant's only source of impairment to her spine were the work-related injury, "she would be able to return to her former position of employment and would be capable of other sustained remunerative work."
 {¶ 17} On an accompanying form, Dr. Hanington stated that, "considering only her allowances, and disregarding the unrelated thoraco-lumbar fusion," claimant could sit for five to eight hours per day and stand or walk for five to eight hours. He concluded that claimant could lift up to 20 pounds for three to five hours, and could lift up to ten pounds on an unrestricted basis. Claimant could frequently use foot controls and climb stairs, and could occasionally climb ladders, crouch, stoop, bend, kneel, reach overhead and reach to the floor. Use of the upper extremities for handling objects was unrestricted, as was reaching at the waist level.
 {¶ 18} 7. Claimant filed a motion for leave to take Dr. Hanington's deposition due to the "substantial disparity" between his report and Dr. Slowik's report of March 6, 1998. In the alternative, claimant sought to submit interrogatories. The motion was denied.
 {¶ 19} 8. Claimant submitted an employability assessment from Jennifer J. Stoeckel, Ph.D., who found that claimant's former work was unskilled and required medium exertion. Dr. Stoeckel placed claimant in the low-average range for intellectual functioning, with grade-school levels of reading and math.
 {¶ 20} 9. An employability assessment was also prepared by John P. Kilcher, who noted that claimant completed the eighth grade and reported that she could read and write but not do basic math. Accordingly, Mr. Kilcher found that claimant would not be qualified to participate in a formal vocational retraining program. However, he concluded that claimant "would have the ability to meet the basic demands of entry-level occupations through an on-the-job training program" as long as the job was within her physical capacity. He concluded that claimant's past work as a housekeeper was unskilled and "exertional" in nature, and he noted that the Dictionary of Occupational Titles ("DOT") classified the job of "Housekeeper 381.687-014" as "heavy" labor. In addition, Mr. Kilcher noted that claimant's age was a disadvantage for reemployment. In regard to other factors affecting claimant's employability, Mr. Kilcher noted that claimant was in an automobile accident that required her to undergo two surgeries.
 {¶ 21} Mr. Kilcher opined that claimant would be qualified for unskilled entry-level jobs through on-the-job training that did not require math ability. In regard to Dr. Hanington's use of the term "light-duty work," Mr. Kilcher viewed that term as describing a temporary assignment that the former employer would provide within limitations provided by the treating physician. However, he noted that the specific functional restrictions listed by Dr. Hanington would place claimant in the sedentary or light categories. Therefore, he listed job options for claimant in those categories. He concluded that, if the commission determined that claimant was medically restricted to sedentary work, she could do several jobs immediately (including microfilm document preparer, addresser, surveillance system monitor, and patcher) and could perform other sedentary jobs with on-the-job training (including sorter, semi-conductor assembler, automobile locator, bench hand, and sample worker). Mr. Kilcher further opined that, if the commission found that claimant could perform light work, she could do several jobs immediately (including small parts assembler, machine tender, collator operator, microfilm processor, camera operator, and postage-machine operator) and could perform other light jobs with on-the-job training (including food assembler, fabricator, upholstery helper, and lot attendant).
 {¶ 22} 10. In May 1999, the PTD application was heard by a staff hearing officer, who denied PTD as follows:
 {¶ 23} "It is the finding of the Staff Hearing Officer that this claim has been allowed for: LUMBAR STRAIN; AGGRAVATION OF PRE-EXISTING ARTHRITIS.
 {¶ 24} "* * *
 {¶ 25} "The claimant's Application for Permanent Total Disability Compensation is supported by a report from Dr. Slowik dated 03/06/98. * * *
 {¶ 26} "* * * Dr. Hanington noted that the claimant had an automobile accident in 1986 and sustained a compression fracture at the L1 site and that the claimant underwent a spinal fusion of the T11-L3 area on 06/26/90 and the claimant underwent a second surgery for spinal fusion at T8-L3 on 07/06/90. The doctor noted that both surgeries were the result of the automobile accident and were not related to [the] industrial injury in 1976.
 {¶ 27} "Dr. Hanington * * * stated that the allowed orthopedic conditions result in a 5% whole person impairment rating. Dr. Hanington concluded that the claimant would be able to engage in sedentary and light employment activity and that the claimant would be able to return to her former position of employment.
 {¶ 28} "Dr. Hanington stated that the claimant could sit, stand, walk for 5-8 hours in an 8 hour workday and would be unrestricted in her ability to lift, carry, push, pull or otherwise move objects weighing up to 10 pounds and would likewise be able to do the same with objects weighing 10-20 pounds for 3-5 hours in an 8 hour workday. Dr. Hanington stated that the claimant would be unrestricted in her ability to handle objects as well as reach to waist and to knee level. Dr. Hanington stated that the claimant would be frequently able to climb stairs as well as use her feet for foot controls.
 {¶ 29} "Dr. Hanington concluded by stating that the claimant would be able to occasionally climb ladders as well as stoop, crouch, bend, kneel, and reach overhead and to floor level.
 {¶ 30} "The Staff Hearing Officer finds that the claimant's orthopedic condition is permanent in nature and does not prevent the claimant from returning to her former position of employment. The Staff Hearing Officer further finds that the claimant would be able to engage in sedentary and light work activity within the restrictions and abilities noted by Dr. Hanington.
 {¶ 31} "The Staff Hearing Officer concludes that the claimant would be able to return to her former position of employment as a housekeeper based upon the opinion of Dr. Hanington. The Staff Hearing Officer does not find the report of Dr. Slowik of any value as it does not give any findings to support his opinion that the claimant would be permanently and totally disabled * * *.
 {¶ 32} "The Staff Hearing Officer further finds that the Claimant's Application for Permanent Total Disability Compensation lists her former positions of employment as a housekeeper which included a description of duties which included dusting, mopping, sweeping, taking out garbage and cleaning a break area. This description of the claimant's former position of employment is consistent with the physical restrictions and abilities as noted by Dr. Hanington.
 {¶ 33} "The Staff Hearing Officer further notes that the claimant did not appear and testify at the hearing as to the claimant's former position of employment and the responsibilities and duties of that position. Therefore, the Staff Hearing Officer finds that the preponderance of evidence indicates that the claimant would be able to return to her former position of employment. Therefore, based upon the findings, the Staff Hearing Officer finds that the claimant is not permanently and totally disabled.
 {¶ 34} "In the alternative, assuming that the claimant is precluded from returning to her former position of employment, the Staff Hearing Officer finds that the claimant's age, education and work experience would not be barriers to the claimant engaging in sustained remunerative employment.
 {¶ 35} "Although the claimant is 67 years of age and this would be a detriment to the claimant, it would not preclude the claimant from having the ability to meet the demands of entry-level occupations through on-the-job training programs.
 {¶ 36} "The Staff Hearing Officer finds that the claimant's 7th grade education along with her ability to read and write would be adequate for the claimant qualifying for entry-level positions through on-the job training as long as the positions did not require any math and were within her physical capabilities.
 {¶ 37} "The Staff Hearing Officer finds that the claimant's past work experience as a housekeeper has not provided the claimant with any transferable skills but that this past work history would allow the claimant to perform entry-level, unskilled jobs through on-the-job training.
 {¶ 38} "Based upon the restrictions and abilities noted by Dr. Hanington in his report, the Staff Hearing Officer finds that the claimant would be able to engage in sedentary or light work in the following positions with academic remediation. Those jobs are: document preparer, addresser, surveillance system monitor, wire code waxer and patcher. Light work employment would include work as a small parts assembler, machine tender, microfilm processor, microfilm camera operator, microfilm mounter and postage machine operator.
 {¶ 39} "The Staff Hearing Officer finds that the claimant would be able to engage in the following entry level jobs following on-the-job training: balance assembler, dialer, sorter, semi-conductor assembler, automobile locator, bench hand and sample worker. Light work employment would include work as a food assembler, upholstery helper, foam fabricator, and lot attendant.
 {¶ 40} "The Staff Hearing Officer's conclusions are based upon the vocational assessment which was completed at the request of the Industrial Commission by Mr. K[i]lcher on 01/25/99."
 Conclusions of Law: {¶ 41} Claimant argues that that the commission abused its discretion in denying leave to take Dr. Hanington's deposition and in denying PTD compensation based on the medical and vocational factors.
 {¶ 42} Under R.C. 4123.09, parties may take depositions in workers' compensation claims with permission. The factors for considering the reasonableness of a request for deposition "include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay." Ohio Adm. Code 4121-3-09(A)(6)(d).
 {¶ 43} In State ex rel. Cox v. Greyhound Food Mgt., Inc.,95 Ohio St.3d 353, 2002-Ohio-2335, the Ohio Supreme Court clarified the standard for considering depositions. The court explained that substantial disparity between percentages of impairment as estimated by different doctors can be irrelevant when the issue for adjudication is not the percentage of disability. Moreover, the court emphasized that substantial disparities in the evidence are fairly common in PTD proceedings and that one of the primary purposes of the hearing is for the parties to present and debate the relative strengths and weaknesses of divergent reports. The court further observed that the listed factors were not exclusive and that, in some cases, it is more appropriate to consider whether there is a defect in the subject report that can be cured by a deposition and to evaluate whether the hearing itself is an equally reasonable option for resolving the questions.
 {¶ 44} In her motion requesting a deposition, claimant asserted a substantial disparity between Dr. Hanington's report and Dr. Slowik's report. However, Dr. Slowik's opinion consists of a one-sentence conclusion that claimant was permanently and totally disabled. There are no examination findings nor any specific opinions regarding physical restrictions caused by the allowed conditions. Indeed, there is no statement of the allowed conditions. In contrast, Dr. Hanington provided detailed clinical findings together with a report of claimant's current complaints (in which claimant reported that she was having no back problems). He discussed claimant's medical history in detail. Further, Dr. Hanington described specific physical capacities and limitations. Given the absence of detail or discussion in Dr. Slowik's report, the magistrate concludes that it did not create a disparity in content that would require permission to take Dr. Hanington's deposition.
 {¶ 45} Further, there was no internal defect in Dr. Hanington's report that would require a deposition. Dr. Hanington set forth claimant's current complaints and medical history, described his clinical observations, and indicated his belief that claimant could return to a housekeeping position that involved lifting up to 20 pounds for three to five hours per day, lifting up to ten pounds for more than eight hours, walking and standing for up to eight hours, and occasional bending and reaching. Dr. Hanington's opinions regarding the physical activities that claimant could and could not perform were clear and specific.
 {¶ 46} Claimant argues that Dr. Hanington did not realize that housekeeping work is heavy labor (according to Mr. Kilcher's report), and that, accordingly, his opinion that claimant could return to work as a housekeeper rendered his entire report defective as a matter of law. The magistrate disagrees. First, there is no internal contradiction on the face of the report. Dr. Hanington stated that claimant was injured as a housekeeper while lifting a heavy bucket, and he subsequently limited claimant to lifting no more than 20 pounds. His findings were not patently inconsistent with the work he described her as performing, as in the decision cited by claimant. See State ex rel. Taylor v. Indus. Comm.(1995), 71 Ohio St.3d 582; see, also, State ex rel. Lopez v. Indus.Comm. (1994), 69 Ohio St.3d 445. Dr. Hanington's report simply does not present an internal inconsistency that must bar his report from evidentiary consideration.
 {¶ 47} Second, there is no evidence in the record that Dr. Hanington was given full vocational information. Mr. Kilcher and Dr. Stoeckel did not submit their vocational reports until after Dr. Hanington had rendered his medical opinion. Third, Dr. Hanington was not a vocational specialist nor was he the finder of fact, and he did not have the role of rendering a conclusive opinion as to whether claimant was disabled from performing her former position of employment. His primary role was to provide a description of claimant's functional capabilities, delineating the physical activities she could and could not do. It was the commission's duty to examine the vocational evidence and to ascertain whether the medical restrictions delineated by the doctor on whom it relied were consistent with the job description it chose to accept.
 {¶ 48} The magistrate concludes that the commission did not meet this duty and that its analysis was internally inconsistent. The commission expressly accepted claimant's description of her former duties as stated in her vocational questionnaire, but it then accepted medical restrictions that would not permit her to return to all the duties she had listed.
 {¶ 49} A close review of claimant's vocational questionnaire is important. As previously noted, claimant listed her "basic duties" in the first part of the form as "cleaning and stocking restrooms," and she described her "exact operations" as cleaning the break room, dusting, sweeping, mopping, cleaning bathrooms and stocking supplies of paper and soap. This narrative description is subject to broad interpretation as to the level of exertion required. However, on the second page of the form, where claimant was asked to indicate specific physical demands of the job, she indicated that the job required bending "constantly," among other things.
 {¶ 50} The commission could not rely on this vocational questionnaire and simultaneously rely on Dr. Hanington's physical restrictions to support the conclusion that claimant could perform her previous employment, because Dr. Hanington had restricted claimant to "occasional" bending. The commission's reliance on both the questionnaire and the restrictions of Dr. Hanington was inconsistent, in that the commission adopted a job description requiring activities beyond the capacities set by Dr. Hanington. Because the commission failed to reconcile the inconsistency, its analysis fails to comply with State exrel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, insofar as it found that claimant could return to her former job.
 {¶ 51} For several reasons, the magistrate concludes that the fatal inconsistency lies in the commission's analysis, not in Dr. Hanington's report. First, as indicated above, Dr. Hanington's report is very specific and clear as to claimant's medical restrictions and capacities, and the basis for those findings. Thus, his report contains information and opinions that are relevant. Removing his report from consideration would not be appropriate; the medical assessment of specific activities that a worker can and cannot do, functionally, is the crucial information in a PTD medical report, not the doctor's opinion as to "disability" or vocational matters. State ex rel. Quarto Mining Co.v. Foreman (1997), 79 Ohio St.3d 78, 85; State ex rel. Stephenson v.Indus. Comm. (1987), 31 Ohio St.3d 167; State ex rel. Catholic Diocese ofCleveland v. Indus. Comm. (1994), 69 Ohio St.3d 560. Where a doctor's opinion on disability/vocational matters is beyond the bounds of his expertise, the commission may simply focus on the medical information and disregard the vocational comments rather than entirely remove the medical report from consideration, depending on the content of the report. SeeStephenson; Catholic Diocese.
 {¶ 52} Second, the record does not reflect that Dr. Hanington relied on the questionnaire. Indeed, the record does not reflect the source of Dr. Hanington's understanding of the former work (i.e., whether claimant gave him a general description during the interview, etc.). Dr. Hanington's report, on its face, includes no fatal contradictions.
 {¶ 53} Third, the magistrate rejects the argument that Dr. Hanington's report is defective because his employment opinion was contradicted by the employment opinion of Mr. Kilcher, who stated that claimant's former job involved heavy labor. First, Mr. Kilcher described claimant's former duties only as unskilled and "exertional." He did not state that this worker's actual duties involved heavy labor. Rather, he simply reported that the DOT listed a housekeeping job in the heavy category. Indeed, Dr. Stoeckel had described claimant's former work as involving medium exertion. Reviewing the reports individually of Drs. Hanington and Stoeckel and Mr. Kilcher, the magistrate finds no defect that would remove any of them from evidentiary consideration. Rather, the problem arose when the commission adopted inconsistent views without recon-ciling the inconsistencies.
 {¶ 54} Because the commission expressly and simultaneously relied on both the questionnaire and Dr. Hanington's restrictions, its rationale was internally inconsistent insofar as it concluded that claimant could perform her prior job. Accordingly, the commission abused its discretion in determining that claimant could return to her former employment as described in the questionnaire it adopted.
 {¶ 55} Next, the magistrate turns to the commission's alternative rationale, which was that, even if claimant could not return to housekeeping work, she was not precluded from all sustained remunerative employment based on her medical and vocational factors. In reaching this conclusion, the commission evaluated claimant's age, education, past experience, literacy, and trainability. In regard to age, the commission acknowledged that it would be a disadvantage but concluded that claimant's age would not prevent her from meeting the demands of entry-level occupations. Further, although claimant's age might render her ineligible for a formal training program, the commission found that claimant's age would not prevent her from engaging in on-the-job training. That finding was within the commission's discretion as the finder of fact. See, e.g., State ex rel. Moss v. Indus. Comm. (1996),75 Ohio St.3d 414, 417.
 {¶ 56} In regard to education, the commission noted that claimant's years of formal education had provided her with the ability to read and write, which would qualify her for entry-level unskilled work through on-the-job training. Again, that finding was within the commission's discretion. Even where a claimant cannot read or write "well," basic literacy can qualify the claimant for entry-level work. SeeState ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354. Also, Mr. Kilcher found that claimant's education and literacy would qualify her for entry-level work. Thus, the commission's finding was supported by some evidence. The commission acknowledged claimant's reported inability to perform basic math, and it accounted for this factor by limiting claimant's options to jobs that did not require mathematical ability. The magistrate finds no abuse of discretion.
 {¶ 57} In regard to past work, the commission found that the former work did not yield transferable skills but that the lack of current skills would not prevent employment because claimant could learn new duties through on-the-job training. These findings were supported by some evidence in the record. Mr. Kilcher specifically opined that claimant's ability to read and write would qualify her for entry-level work, and he opined that claimant was capable of learning new duties through on-the-job training. The magistrate finds no reason that his report could not constitute some evidence on which the commission could rely in regard to claimant's ability to be trained on the job.
 {¶ 58} In mandamus, the court must uphold an order supported by some evidence regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision.State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373. Here, the first basis for the commission's decision constituted an abuse of discretion, but the alternative basis was within its discretion. The commission cited some evidence to support its alternative conclusion that, although claimant could not return to her former position of employment, she could perform some types of work in the sedentary to light range, and it provided an adequate explanation of that conclusion. Therefore, the magistrate recommends that the court deny the requested writ of mandamus.